1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

JAMES S. GARNETT,                          )
                                           )
              Petitioner,                  )        CASE NO.  C05-1438MJP-MJB
                                           )
       v.                                  )
                                           )
RICHARD MORGAN,                            )        REPORT AND RECOMMENDATION
                                           )
              Respondent.                  )
_____)

11
12
13
14

15

INTRODUCTION AND SUMMARY CONCLUSION

16

        Petitioner is a state prisoner who is currently in custody at the Washington State Penitentiary in

17

Walla Walla, Washington pursuant to the judgment and sentence of the Skagit County Superior Court.

18

He has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 seeking relief from his

19

conviction on a charge of aggravated first degree murder.  Respondent has filed an answer to the

20

petition as well as relevant portions of the state court record.  Petitioner has filed a response to

21

respondent's answer.  The briefing is now complete, and this matter is ripe for review.  This Court,

22

having reviewed the petition, the briefs of the parties, and the state court record, concludes that

23

petitioner's federal habeas petition should be denied and this action should be dismissed with

24

prejudice.

25

26

REPORT AND RECOMMENDATION
PAGE - 1

1

<u>FACTUAL AND PROCEDURAL HISTORY</u>

2

The Court of Appeals of Washington summarized the facts relevant to petitioner's conviction

3

as follows:

4

Dan Diorio, a 34-year-old mentally ill man, was last seen alive on Tuesday, September 14, 1999.  That day, Diorio took six bottles of Heineken beer and went out drinking with James S. Garnett, a man Diorio called his "buddy."  According to Garnett and several others, Diorio and Garnett drank beer together at Evelyn's Tavern that day. While there, Diorio flashed a roll of cash.  Diorio regularly carried with him up to $10,000 in cash and often counted that money in public.  Garnett said that he left Diorio at Evelyn's.  A bartender at Evelyn's, however, saw Diorio leave the tavern with Garnett and a woman.

5

6

7

8

On October 28, 1999 – six weeks later – Diorio's body was discovered in a shallow grave.  Diorio had been shot twice in the head and had no money on him.  Near Diorio's body, there were 18 beer bottles and cans, including one Heineken beer bottle. A pathologist estimated that he had been dead two to three weeks.

9

10

11

Garnett, who regularly paid his rent late, had receipts for several money orders dated the day Diorio was last seen alive.  Although Garnett initially cooperated with the police, that cooperation was short-lived.

12

13

On November 19, 1999, the State charged Garnett with first degree murder. After receiving additional information about the crime from Garnett's wife, the State amended the charge to aggravated first degree murder.[1]  After a two week trial, a jury found Garnett guilty.  The trial court sentenced him to life imprisonment without the possibility of parole.

14

15

16

(Dkt. No. 12, Ex. 5 at 2-3.)

17

Petitioner appealed his conviction to the Court of Appeals of Washington.  (*Id.*, Ex. 2.)  On

18

March 11, 2002, the Court of Appeals issued an unpublished opinion affirming petitioner's conviction.

19

Petitioner's subsequent motion for reconsideration was denied on April 25, 2002.  (*Id.*, Exs. 6 and 7.)

20

On May 28, 2002, petitioner filed a petition seeking review by the Supreme Court of Washington.

21

(*Id.*, Ex. 9.)  Petitioner presented the following issues to the Supreme Court for review:

22

1.      Were Kymberly Garnett's taped statements erroneously admitted as

23

24

[1] [Court of Appeals' footnote] That same day, the State charged Garnett's wife, Kimberley Garnett, with aggravated first degree murder.  Skagit Co. Sup. Ct. No. 99-1-00687-8.  Her case was tried separately.

25

REPORT AND RECOMMENDATION
PAGE - 2

26

statements against interest when she blamed Garnett for the murder, admitted facts implicating her only in minor offenses, and gave the extremely contradictory statements during a drug binge with the police informant?

2. Did admission of Kym's statements violate Garnett's constitutional right to confrontation?

3. After Garnett objected to being required to wear a leg restraint under his clothing, should the trial court have held a hearing to determine whether restraint was necessary?

4. Did "overwhelming evidence" support Garnett's conviction so that the visibility of his incarceration was not prejudicial?

5. Where Garnett was in jail on suspicion of murder, was his letter to his wife relevant when it expressed an "upbeat and confident" response to his wife's making statements to a police informant?

6. Was the letter prejudicial where it referred to Garnett's interaction with his attorney, said they were "laughing all the way to court," called the police "pigs," and said the attorney would "kick [Kym's] ass" in court?

7. Should a warrant be invalidated when information in the affidavit was included with reckless disregard for its falsity, and the judge who signed the warrant testified such information was important to his decision to sign?

8. The State amended the charge to Aggravated Murder 18 days before trial. Where "new evidence" supporting the amendment was inadmissible and other evidence showed premeditation and the aggravating factors, did the trial court abuse its discretion in allowing the State to amend, forcing Garnett to choose between his right to counsel and to a speedy trial?

9. During cross-examination of Garnett's mother, the prosecutor asked her if she knew that "[her] daughter-in-law described how [her] son killed Mr. Diorio." Did the prosecutor commit prejudicial misconduct by asking the question without factual foundation?

(Dkt. No. 12, Ex. 9 at 1-2 (footnote omitted).)

On February 6, 2003, the Supreme Court issued an order denying the petition for review without comment. (*Id.*, Ex. 10.) And, on February 19, 2003, the Court of Appeals issued its mandate terminating direct review. (*Id.*, Ex. 11.)

On February 11, 2004, petitioner filed a personal restraint petition in the Court of Appeals of Washington. (*Id.*, Ex. 12.) Petitioner argued in his personal restraint proceedings that (1) the trial

REPORT AND RECOMMENDATION
PAGE - 3

judge abused her discretion when she denied a defense motion to dismiss pursuant to CrR 8.3(b); (2) an erroneous jury instruction deprived petitioner of the right to a fair trial; and, (3) the admission at trial of petitioner's wife's out-of-court statements violated petitioner's Sixth Amendment right to confront witnesses against him.  (*See* Dkt. No. 12, Exs. 13 and 14.)

On October 5, 2004, the Court of Appeals issued an Order dismissing petitioner's personal restraint petition.  (*Id.*, Ex. 16.)  Petitioner thereafter filed a motion for reconsideration in the Court of Appeals.  (*Id.*, Ex. 17.)  The motion was forwarded to the Supreme Court where it was treated as a motion for discretionary review.  (*Id.*, Ex. 18.)  Petitioner subsequently filed an actual  motion for discretionary review in the Supreme Court together with a motion asking that he be permitted to supplement the existing record.  (*Id.*, Exs. 19 and 20.)  Petitioner's motion to supplement was granted, and his motion for discretionary review was filed.  (*Id.*, Ex. 21.)

Petitioner presented the following issues to the Supreme Court in his motion for discretionary review:

> a.   The Court of Appeals erroneously found that Petitioner's defense did not support it's allegation of government misconduct with competent evidence when the trial court had refused to allow the defense to present witnesses to substantiate those claims.  This violated Petitioner's right to a Fair trial, his right to Due Process as guaranteed by the 6th and 14th Amendments to the United States Constitution.
>
> b.   The Court of Appeals erroneously relied upon State v. Whitney, 108 Wn. 2d 506, 511 739 P.2d 1150 (1987) to characterize Felony Murder and Premeditated First Degree Murder as alternate means of committing the same crime.  This is in conflict with the Washington State Supreme Court's decision in State v. Brett, 126 Wn. 2d 136, 181, 892 P.2d 29 (1995) and the decision of the Court of Appeals Division Two in State v. Meas, 118 Wn. App. 297, 302, 75 P.3d 998 (2003).
>
> c.   The Appellate Court Erroneously ruled that the U.S. Supreme Court decision in Crawford v. Washington, ___ U.S. ___, 124 S. Ct. 1354, ____ L.Ed.2d _____ (2004), is limited to testimonial statements and committed further error by ruling that taped statements given to an agent of the police are non-testimonial.

(*Id.*, Ex. 20 at 2-3.)

REPORT AND RECOMMENDATION
PAGE - 4

1   On June 15, 2005, the Supreme Court Commissioner issued a ruling denying review.  (*Id.*, Ex.

2   23.)  Petitioner now seeks federal habeas review of his conviction.

3   <u>GROUNDS FOR RELIEF</u>

4   Petitioner asserts the following nine grounds for relief in his federal habeas petition:

5   1.   Petitioner was deprived of his right to confront witnesses against him by the
         State's use of taped statements by his wife.  U.S. Const. Amend. 6.

6

7   2.   Petitioner was deprived of his right to a presumption of innocence and his right
         to a fair trial when he was forced to wear restraints in the presence of the jury.
         U.S. Const. Amend. 6, 14.

8

9   3.   Petitioner was deprived of his right to counsel by the state's use of a letter to
         his wife describing a conversation with his attorney.  U.S. Const. Amend. 6.

10  4.   Petitioner was deprived of his right to Due Process by prosecutorial
         misconduct.  U.S. Const. Amend. 5, 14.

11

12  5.   Petitioner was deprived of his right to Due Process by governmental
         mismanagement and abuse of discretion by the trial court.  U.S. Const. Amend.
         5, 6, 14.

13

14  6.   Petitioner was deprived of his right to a fair trial by an impartial jury and the
         State was relieved of the burden of proving every element of the crime charged
         when the trial judge erroneously instructed the jury.  U.S. Const. Amend. 6, 14.

15

16  7.   Petitioner was deprived of his right to a speedy trial and Due Process when the
         state amended the charges 18 days before the scheduled trial date.  U.S. Const.
         Amend. 5, 6, 14.

17

18  8.   The Trial Court erroneously permitted evidence to be admitted at trial that was
         obtained through an unlawfully obtained search warrant.  U.S. Const. Amend.
         4.

19

20  9.   Petitioner was deprived of his right to Due Process by cumulative effect of
         numerous errors.  U.S. Const. Amend. 5, 14.

21  (Dkt. No. 4 at 3.)

22  <u>DISCUSSION</u>

23  Respondent asserts in his answer to the petition that, with two exceptions, petitioner has

24  properly exhausted his state court remedies with respect to the claims set forth in his federal habeas

25

26  REPORT AND RECOMMENDATION
    PAGE - 5

petition.  Respondent contends that petitioner failed to properly exhaust his seventh ground for relief because the claim was not presented to the Washington Supreme Court as a federal constitutional claim.  Respondent further contends that petitioner failed to properly exhaust his ninth ground for relief because he failed to present that claim to the Washington Supreme Court at all.  Respondent argues that the claims which have not been properly exhausted are now procedurally barred under an independent and adequate state law.  Respondent further argues that petitioner is not entitled to relief with respect to any of his seven properly exhausted claims, and that his petition should therefore be denied.

<u>Exhaustion and Procedural Default</u>

It is well established that state remedies must first be exhausted on all issues raised in a federal habeas corpus petition.  *Rose v. Lundy*, 455 U.S. 509 (1982); 28 U.S.C. § 2254(b), (c).  Exhaustion must be shown either by providing the highest state court with the opportunity to rule on the merits of the claim or by showing that no state remedy remains available.  *Batchelor v. Cupp*, 693 F.2d 859 (9th Cir. 1982), *cert. denied*, 463 U.S. 1212 (1983).

The exhaustion requirement is a matter of comity, intended to afford the state courts "the first opportunity to remedy a constitutional violation."  *Sweet v. Cupp*, 640 F.2d 233, 236 (9th Cir. 1981).  A federal habeas petitioner must provide the state courts with a fair opportunity to apply controlling legal principles to the facts bearing on his constitutional claim.  *Picard v. Connor*, 404 U.S. 270 (1971); *Anderson v. Harless*, 459 U.S. 4 (1982).  It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state law claim was made.  *Harless*, 459 U.S. at 6.  The habeas petitioner must have fairly presented to the state courts the substance of his federal habeas corpus claims.  *Id.*

The record reflects that petitioner's seventh ground for relief bears some similarity to an issue which was raised by petitioner on direct appeal.  However, close scrutiny of this claim, and the

REPORT AND RECOMMENDATION
PAGE - 6

corresponding issue raised in state court, reveals that the issue was presented to the state courts solely as an issue of *state* law.  To fully exhaust a claim, a petitioner must expressly apprise the state courts that an alleged error is not only a violation of state law, but also a violation of the federal Constitution.  *See Duncan v. Henry*, 115 S. Ct. 887, 888 (1995).  "If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court." *Johnson v. Zenon*, 88 F.2d 828, 830 (9th Cir. 1996).  As petitioner failed to present his seventh ground for federal habeas relief to the state courts as an issue of federal law, that claim has not been properly exhausted.

With respect to petitioner's ninth ground for federal habeas relief, the record reflects that petitioner presented a cumulative error claim to the Court of Appeals on direct appeal.  However, no such claim was ever presented to the Supreme Court.  Accordingly, petitioner's ninth ground for federal habeas relief has not been properly exhausted.  *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).

This Court is satisfied, based upon its review of the record, that petitioner has not properly exhausted his seventh or ninth grounds for federal habeas relief.  When a petitioner fails to exhaust his state court remedies, and the court to which petitioner would be required to present his claims in order to satisfy the exhaustion requirement would now find the claims to be procedurally barred, there is a procedural default for purposes of federal habeas review.  *Coleman v. Thompson*, 501 U.S. at 735 n. 1.

Respondent argues that petitioner would now be time barred from returning to the state courts to attempt to exhaust his unexhausted claims.  RCW 10.73.090(1) provides that a petition for collateral attack on a judgment and sentence in a criminal case must be filed within one year after the judgment becomes final.  A judgment becomes final for purposes of state collateral review on the date the appellate court issues its mandate disposing of a timely direct appeal from the conviction.  RCW

REPORT AND RECOMMENDATION
PAGE - 7

10.73.090(3)(b).  In this case, petitioner's conviction became final on February 19, 2003, the date the Court of Appeals issued its mandate terminating petitioner's direct appeal.  It thus appears that petitioner would now be time-barred from returning to the state courts to present his unexhausted claims.

Based upon the foregoing, this Court concludes that petitioner has procedurally defaulted on his seventh and ninth grounds for federal habeas relief.  When a state prisoner defaults on his federal claims in state court, pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.  *Coleman v. Thompson*, 501 U.S. at 750.

Cause and Prejudice

To satisfy the "cause" prong of the cause and prejudice standard, petitioner must show that some objective factor external to the defense prevented him from complying with the state's procedural rule.  *Coleman*, 501 U.S. at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  To show "prejudice," the petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).  Only in an "extraordinary case" may the habeas court grant the writ without a showing of cause or prejudice to correct a "fundamental miscarriage of justice" where a constitutional violation has resulted in the conviction of a defendant who is actually innocent.  *Murray*, 477 U.S. at 495-96.

Petitioner asserts that his failure to properly exhaust his seventh and ninth grounds for relief is attributable to his appointed appellate counsel whom petitioner contends rendered ineffective assistance.  While ineffective assistance of counsel may constitute cause for a procedural default,

REPORT AND RECOMMENDATION
PAGE - 8

1  such a claim must "be presented to the state courts as an independent claim before it may be used to

2  establish cause for a procedural default." *Murray v. Carrier*, 477 U.S. at 489.  Petitioner never

3  presented any ineffective assistance of appellate counsel claim to the state courts and, thus, he may

4  not rely on such a claim to establish cause for his procedural default.  Because petitioner has not met

5  his burden of demonstrating cause for his procedural default, this Court need not determine whether

6  petitioner carried his burden of showing actual prejudice.  *Cavanaugh v. Kincheloe*, 877 F.2d 1443,

7  1448 (9th Cir. 1989) (citing *Smith v. Murray*, 477 U.S. 527, 533 (1986)).

8       In addition, petitioner makes no colorable showing of actual innocence.  Petitioner therefore

9  fails to demonstrate that his seventh and ninth grounds for relief are eligible for federal habeas review.

10  Accordingly, this Court recommends that petitioner's federal habeas petition be denied with respect

11  to those two claims.

12  <u>Standard of Review for Exhausted Claims</u>

13       Under the Anti-Terrorism and Effective Death Penalty Act, a habeas corpus petition may be

14  granted with respect to any claim adjudicated on the merits in state court only if the state court's

15  decision was *contrary to*, or involved an *unreasonable application* of, clearly established federal law,

16  as determined by the Supreme Court, or if the decision was based on an unreasonable determination of

17  the facts in light of the evidence presented.  28 U.S.C. § 2254(d) (emphasis added).

18       Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court

19  arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the

20  state court decides a case differently than the Supreme Court has on a set of materially

21  indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362 (2000).  Under the "unreasonable

22  application" clause, a federal habeas court may grant the writ only if the state court identifies the

23  correct governing legal principle from the Supreme Court's decisions but unreasonably applies that

24  principle to the facts of the prisoner's case.  *Id.*  The Supreme Court has made clear that a state

25

26  REPORT AND RECOMMENDATION
PAGE - 9

1   court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v.*

2   *Andrade*, 538 U.S. 63, 69 (2003).

3   Ground One: Confrontation Clause

4        Petitioner asserts in his first ground for relief that he was denied his right to confront

5   witnesses against him in violation of the Sixth Amendment to the United States Constitution and the

6   decision of the United States Supreme Court in *Crawford v. Washington*, 541 U.S. 36 (2004).  At

7   issue in this claim are out-of-court statements made by petitioner's wife, Kymberly Garnett, to a

8   confidential informant, Kristine Stafford.  Ms. Stafford was equipped with a body wire and recorded

9   a number of statements which the State sought to admit at petitioner's trial.  After extensive hearings

10   regarding the admissibility of the statements, the trial court found that only two short segments of the

11   recorded statements were, in fact, admissible as statements against Ms. Garnett's penal interest.

12   Those two statements are referred to as the "tazer" statement and the "laundromat" statement.

13        The transcript of the "tazer" statement read as follows:

| | |
|---|---|
| Kristine | I was just curious 'cause Dan I heard was pretty tough. |
| Kim | He's a big boy actually. |
| Kristine | I mean I heard he was strong too though. |
| Kim | Well he is.  He was very strong. |
| Kristine | That's why I was wondering if James hit him, got him from behind or what? |
| Kim | Well he had a zapper. |
| Kristine | He should have tested it on a dog or... |
| Kim | Well we were going to test it on somebody.  We just couldn't get anybody. |
| Kristine | Fuck.  Come here! |
| Kim | Josh, Josh called over Little Leroy and... |
| Kristine | Uh huh. |
| Kim | We were going to do it on him.  You know supri, let me fucking try it on you, I'll pay you 200 bucks. |
| Kristine | Uh huh. |
| Kim | And he was good... |
| Kristine | Uh huh. |
| Kim | And then Josh changed his mind or something. |
| Kristine | Fuck. |
| Kim | I know. |

REPORT AND RECOMMENDATION
PAGE - 10

| | | |
|---|---|---|
| 1 | Kristine | I used to carry one of those for protection.  My brother, like I said, turned up the amp though so it fucking didn't just hurt him it'd knock him out. |
| 2 | Kim | Yuhhh. |
| 3 | Kristine | Where did you guys get it at, Northern Sales? |
| | Kim | We bought it up in Bellingham. |
| 4 | Kristine | Really? |
| | Kim | At that shop up there. |
| 5 | Kristine | (inaudible) |
| | Kim | A gun shop or whatever it is. |
| 6 | Kristine | Oh really.  I thought, you used to have to go to like the Army Surplus to get 'em. |
| 7 | Kim | Yeah, well the only place we could find them was (inaudible). |
| | Kristine | They have them here at the... |
| 8 | Kim | We ended up stealing it as a matter of fact. |
| | Kristine | Oh really. |
| 9 | Kim | Yeah, out of the store.  Yeah. |

(Dkt. No. 12, Ex. 2, App. B, Transcript of Tape No. 7.)

The transcript of the "laundromat" statement read as follows:

| | | |
|---|---|---|
| 12 | Kim | (inaudible) Well because time wise, technically you know he was only gone 45 minutes to an hour. |
| 13 | Kristine | Oh wow. (inaudible) |
| | Kim | To do all that.  And he to come home all dirty and sweaty, but he did.  He came home with blood on his jeans. |
| 14 | Kristine | Oh no. |
| 15 | Kim | (inaudible) |
| | Kristine | Well, yeah. |
| 16 | Kim | And I remember saying... |
| | Kristine | Well that's weird. |
| 17 | Kim | No it's not nice!  And he jumped in the shower and he bagged up his clothes.  And I go in with the pull-up and take them to the laundromat... |
| 18 | Kristine | Because, oh... |
| 19 | Kim | Put them in the trash can. |
| | Kristine | Oh, at the laundromat.  Oh, the one down here on Riverside? |
| 20 | Kim | By Thrifty's. |
| | Kristine | Oh, okay, yeah. |
| 21 | Kim | I know you'll never repeat this. |

(*Id.*, Ex. 2, App. B, Transcript of Tape No. 1.)

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

REPORT AND RECOMMENDATION
PAGE - 11

1   U.S. Const. Amend. VI.  In *Ohio v. Roberts*, 448 U.S. 56 (1980), the United States Supreme Court

2   held that the Confrontation Clause does not bar the admission of an out-of-court statement of an

3   unavailable witness so long as the statement bears "adequate indicia of reliability."  *Id*. at 66.

4        In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court partially abrogated

5   *Roberts*.  The Court, in *Crawford*, drew a distinction between testimonial and non-testimonial

6   hearsay, and rejected the *Roberts* test as to testimonial hearsay statements.  As to testimonial hearsay

7   statements, the Court held that such statements are barred under the Confrontation Clause unless the

8   declarant is unavailable and the defendant had prior opportunity to cross-examine the declarant.

9   *Crawford*, 541 U.S. at 68-69.

10        The first question this Court must address in evaluating petitioner's Confrontation Clause

11   claim is whether the statements at issue here were "testimonial" and therefore subject to the rule

12   announced in *Crawford*.[2]  The Supreme Court did not spell out a comprehensive definition of

13   "testimonial" in *Crawford*, but did note that the term "applies at a minimum to prior testimony at a

14   preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."  *Id*. at 68.

15        On review of petitioner's personal restraint petition, in which petitioner specifically raised the

16   Confrontation Clause issue under *Crawford*, the Court of Appeals of Washington concluded that

17   admission of the recorded statements was not unlawful because the statements were not testimonial

18   and therefore were not governed by *Crawford*.[3]  (Dkt. No. 12, Ex. 16 at 6.)  This conclusion of the

19   _____

20       [2]  The parties do not dispute that Ms. Garnett was unavailable to testify at petitioner's trial.

21       [3]  The Supreme Court of Washington did not review the substance of petitioner's *Crawford*
    claim because, subsequent to the Court of Appeals' resolution of petitioner's personal restraint
22   petition, the Supreme Court decided *In re Markel*, 154 Wn.2d 262 (2005), in which it held that
    *Crawford* does not apply retroactively to cases such as petitioner's which were final before *Crawford*
23   was decided.  (*Id*., Ex. 23 at 3.)  This Court must, however, review the substance of petitioner's
    *Crawford* claim because the Ninth Circuit has held that the United States Supreme Court's decision
24   in *Crawford* does apply retroactively to collateral proceedings such as the instant habeas petition.
    *Bockting v. Bayer*, 399 F.3d 1010 (9th Cir. 2005), *Opinion Amended on Denial of Rehearing*, 408
25

26   REPORT AND RECOMMENDATION
    PAGE - 12

1   Court of Appeals was entirely reasonable.  As noted by respondent, the statements at issue in these

2   proceedings are not analogous to the examples of testimonial statements identified by the Supreme

3   Court in *Crawford*.  *See Crawford*, 541 U.S. at 51-52.  Moreover, the Courts that have addressed

4   *Crawford* challenges to similar types of statements; *i.e.*, surreptitiously recorded or monitored

5   conversations, have held that such statements are not "testimonial" under *Crawford*.  *See United*

6   *States v. Hendricks*, 395 F.3d 173, 181 (3d Cir. 2005) (citing a series of cases from other

7   jurisdictions which addressed similar issues).

8          Because the statements at issue here were non-testimonial, this Court turns to the question of

9   whether the statements were properly admitted under the *Roberts* reliability test which remains

10  applicable to non-testimonial statements.  *See Crawford*, 541 U.S. at 68.  Under *Roberts*, an out-of-

11  court statement meets the reliability test if it falls within a "firmly rooted hearsay exception" or bears

12  "particularized guarantees of trustworthiness."  *Roberts*, 448 U.S. at 66.

13         The Court of Appeals of Washington, on direct review of petitioner's conviction, concluded

14  that the challenged statements of petitioner's wife were properly characterized as statements against

15  Ms. Garnett's penal interest.  (Dkt. No. 12, Ex. 5 at 8.)  The Court of Appeals further concluded that

16  the statements were reliable after evaluating them under the criteria set forth in Washington case law

17  for determining the reliability of statements against interest.  (*Id.*, Ex. 5 at 8-9.)

18         As the Ninth Circuit pointed out in *Padilla v. Terhune*, 309 F.3d 614, 618 (9th Cir. 2002),

19  "[t]he Supreme Court has not addressed specifically the admissibility of a statement against interest

20  made by an accomplice or co-conspirator in a private setting, rather than a custodial setting to law-

21  enforcement personnel."  *Id.*  The Ninth Circuit, however, has rejected a Confrontation Clause

22  challenge substantially similar to the one presented here.  *See United States v. Boone*, 229 F.3d 1231

23  (9th Cir. 2000) (girlfriend surreptitiously tape recorded conversation with accomplice in which

24  _____

25  F.3d 1127 (9th Cir. 2005), *Rehearing en Banc Denied*, 418 F.3d 1055 (9th Cir. 2005).

26  REPORT AND RECOMMENDATION
    PAGE - 13

accomplice implicated himself and the defendant in a crime).  The Ninth Circuit has also relied on

the Supreme Court's decision in *Roberts* to hold that "when an accomplice makes a statement

incriminating the defendant in private, to a friend, without mitigating his own role in the crime, the

circumstances surrounding the statement provide a 'particularized guarantee of trustworthiness,'

which satisfies the Confrontation Clause. *Padilla* 309 F.3d at 618-19 (citing *Boone*, 229 F.3d at

1234).

     The two statements of Kymberly Garnett which were admitted at petitioner's trial implicated

Ms. Garnett in the planning and the cover-up of the murder.  The statements were made in what must

have appeared to Ms. Garnett to be a private setting.  Petitioner himself suggests that Ms. Garnett

was paranoid about the police.  It therefore seems unlikely that she would have made these

statements to Ms. Stafford had she suspected Ms. Stafford was working for the police.  This

conclusion is bolstered by the fact that Ms. Garnett said to Ms. Stafford at one point "I know you'll

never repeat this."  In addition, nothing in the two statements which were admitted suggests that Ms.

Garnett was attempting to mitigate her own role in the crime.  It thus appears that these statements

satisfy the *Roberts* reliability test.

     This Court therefore concludes that the determination of the state courts that the recorded

statements were reliable and therefore admissible is neither contrary to, nor does it constitute an

unreasonable application of, federal law.  This Court further concludes, after a careful review of the

record, that the decision of the state courts was based upon a reasonable determination of the facts in

light of the evidence presented.  Accordingly, petitioner's federal habeas petition should be denied

with respect to his first ground for relief.

Ground Two:  Physical Restraint During Trial

     Petitioner asserts in his second ground for relief that he was denied his right to a fair trial

when he was forced to wear restraints in the presence of the jury.  At issue is a knee brace which

REPORT AND RECOMMENDATION
PAGE - 14

petitioner was required to wear during the course of the trial.  The knee brace was worn under his

pants, but caused him to walk as though his knee was stiff.

At trial, petitioner's counsel objected to the use of the knee brace.  Counsel argued that the

use of restraints violated petitioner's right to the presumption of innocence.  Counsel further argued

that petitioner should be allowed to appear without any restraints at all.  The trial court, however,

rejected this argument:

> I have watched Mr. Garnett come in and out of the courtroom.  I think that
> brace is about as inconspicuous of a restraint that can be used as possible.  There is a
> security concern when you have a case of this magnitude and I think that is the best
> that can be done.

> Nothing about his gait indicates that he is restrained.  It does make him walk in
> a some what awkward fashion, his knee is obviously a little stiff, there is nothing
> about that that indicates that he is being restrained, only that he has a limp or some
> sort of problem with his leg.  I don't think that's going to be an issue for the jury.  I
> have made it a special effort to try to watch as he goes back and forth.  I don't think it
> is obvious at all.  I know if the jurors noticed he had a limp, I don't think they are
> going to conclude from that he is being restrained.  It is covered by his pant leg.
> Under these circumstances I think it is necessary there be come sort of restraint[.]
> [T]he alternatives are going to be worse.

(Dkt. No. 12, Ex. 28 at 106.)

The United States Supreme Court has held that the Due Process Clause prohibits "the use of

physical restraints visible to the jury absent a trial court determination, in the exercise of its

discretion, that they are justified by a state interest specific to a particular trial." *Deck v. Missouri*,

125 S.Ct. 2007, 2012 (2005).  However, even if a trial court abuses its discretion in making its

determination that physical restraints are required, a claim of unconstitutional shackling is subject to

harmless error analysis. *Castillo v. Stainer*, 983 F.2d 145 (9th Cir. 1992), *as amended*, 997 F.2d 669

(9th Cir. 1993).

On direct appeal, the Court of Appeals of Washington rejected petitioner's contention that the

trial court deprived him of his right to a fair trial when it required him to wear the knee brace.  The

Court of Appeals explained its decision as follows:

REPORT AND RECOMMENDATION
PAGE - 15

A criminal defendant is "entitled to appear at trial free from all bonds or shackles except in extraordinary circumstances." State v. Turner, 143 Wn.2d 715, 725, 23 P.3d 499 (2001). "Restraints are viewed with disfavor because they may abridge important constitutional rights[.]" State v. Hartzog, 96 Wn.2d 383, 398, 635 P.2d 694 (1981) (listing those rights). In cases involving potential misconduct by a criminal defendant, the "trial judge must exercise discretion in determining the extent to which courtroom security measures are necessary to maintain and prevent injury. That discretion must be founded upon a factual basis set forth in the record." Hartzog, 96 wn.2d at 400; see also Turner, 143 Wn.2d at 726.

In this case, the trial court set forth in the record a factual basis for its decision to require Garnett to wear the knee brace. We reject Garnett's claim that the trial court was required to inquire further, particularly in light of his failure to request that the trial court do so. Moreover, Garnett points to nothing in the record to support his contention that the knee brace was visible to the jury. Rather, his position is that because his movement was altered, the brace's effects were visible. This, however, does not end the inquiry.

The critical issue is whether the restraint revealed to the jury that Garnett was restrained. Although the knee brace undoubtedly altered his gait, Garnett presents no basis for his presumption that jurors would conclude based on a limp that he was restrained. Thus, Garnett did not demonstrate that the knee brace violated his right to a fair trial.

(Dkt. No. 12, Ex. 5 at 3-5.)

This Court agrees with respondent that the state courts properly rejected petitioner's constitutional challenge to the use of "restraints" at his trial. While this Court questions whether the trial court set forth in the record an adequate factual basis for its decision to restrain petitioner during trial, the record supports the conclusion that the restraint was not visible and that it is unlikely jurors would have concluded, based upon the limp caused by the restraint, that petitioner was restrained. Thus, even assuming the trial court abused its discretion in requiring petitioner to wear a knee brace, any error was harmless. Accordingly, petitioner's federal habeas petition should be denied with respect to his third ground for relief.

Ground Three:  Violation of Right to Counsel

Petitioner asserts in his third ground for relief that he was denied his right to counsel when a letter which petitioner wrote to his wife, describing a conversation he had had with his attorney, was

REPORT AND RECOMMENDATION
PAGE - 16

admitted as evidence at his trial.  He argues first that his letter was inadmissible under state law.  He then argues that introduction of the letter, which contained statements about his attorney, improperly commented on his constitutional right to an attorney.

The letter at issue is one which petitioner wrote to his wife after he learned about his wife's arrest and about the body wire.  The letter expressed petitioner's anger at his wife and contained disparaging remarks about the police as well as some statements about his attorney.  Among the statements made in the letter concerning petitioner's attorney were that his attorney "was waiting for 'something' to happen. . . . As of this morning we were 'LAUGHING all the way to <u>court</u>!'  I can't see any thing you <u>made up</u> do 'too' much damage.  OH well. . .  Whatever keeps 'Gary' [petitioner's attorney] on his toes. . . '<u>DAMN</u>' He's the man.  He's my new 'Idol.'" (*See* Dkt. No. 12, Ex. 2, Appendix C.)  Later in the letter, petitioner states  "My lawyer is going to kick your ass."  (*Id.*)

Petitioner asserts that the admission of these statements about his attorney "was intended to make the jury believe Petitioner would use his attorney to . . . 'beat the system.'" (Dkt. No. 4, Memorandum in Support of Petition at 18.)  He further asserts that the prosecutor's arguments regarding these letters "invited the jury to assume Petitioner's use of an attorney to fight the charges was a manipulative tactic, not his constitutional right."  (*Id.*)

The Court of Appeals of Washington rejected petitioner's contention that the letter was irrelevant and unfairly prejudicial, and also rejected petitioner's claim that admission of statements contained in the letter, which reflected his confidence in his attorney, violated his constitutional right to an attorney.  (Dkt. No. 12, Ex. 5 at 9-12.)

Petitioner does not argue any federal constitutional basis for the portion of his claim regarding whether the letter was properly admitted under an exception to the hearsay rule.  Accordingly, that portion of his claim is not cognizable in these federal habeas proceedings.  *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (federal habeas relief does not lie for errors of state law).

REPORT AND RECOMMENDATION
PAGE - 17

Petitioner does specifically present a constitutional challenge to the introduction of comments about his attorney which were contained in the letter. Petitioner cites to two United States Supreme Court cases, *United States v. Jackson*, 390 U.S. 570 (1968), and *Griffin v. California*, 380 U.S. 609 (1965), to support his contention that the portions of the letter referencing his counsel constituted an improper comment on his right to counsel. However, petitioner fails make clear how *Jackson* and *Griffin* support the constitutional challenge which he presents in his third ground for relief.

In *Jackson*, the Supreme Court considered the constitutionality of the Federal Kidnaping Act which created an offense punishable by death for an individual who elected a jury trial, but which set forth no procedure for imposing the death penalty upon an individual who elected to plead guilty or to waive the right to a jury trial. *Jackson*, 390 U.S. at 570-71. The Court held in that case that the selective death penalty procedure established by the Federal Kidnaping Act imposed an unconstitutional burden on the exercise of a constitutional right; *i.e.*, the right to plead not guilty and to demand a jury. *Id.* at 582-83.

In *Griffin*, the Supreme Court considered a provision of California law which allowed the court and counsel to comment on a defendant's failure to testify, and allowed the jury to draw an adverse inference from a defendant's failure to testify at trial. *Griffin*, 380 U.S. at 610-11. The Court held that the Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Id.* at 615.

Neither of these cases shed any light on the issue presented by petitioner here.[4] Petitioner offers no relevant United States Supreme Court authority to support his claim that the admission into

---

[4] When petitioner presented to the state courts on direct appeal his claim that admission of the letter violated his constitutional right to an attorney he relied upon two state cases rather than the United States Supreme Court cases cited here. (*See* dkt. No. 12, Ex. 5 at 11-12.) The state courts concluded that the state law cases were inapposite, just as the federal case cited in these proceedings are inapposite. (*Id.*)

REPORT AND RECOMMENDATION
PAGE - 18

1   evidence of his voluntary statements, expressing confidence in his attorney, constituted an

2   impermissible comment on his right to an attorney.  This Court therefore concludes that the state

3   courts' rejection of this claim was reasonable.  Accordingly, petitioner's federal habeas petition

4   should be denied with respect to his third ground for relief.

5                                    Ground Four:  Prosecutorial Misconduct

6           Petitioner asserts in his fourth ground for federal habeas relief that the prosecutor committed

7   misconduct during her cross-examination of petitioner's mother, Holly Blanco, who testified on behalf

8   of petitioner.  There are two exchanges relevant to petitioner's prosecutorial misconduct claim.  The

9   first is this exchange between petitioner's counsel and Ms. Blanco at the end of counsel's direct

10  examination:

11          Q.      Now, is James a violent person?

12          A.      James is not a violent person at all.

13          Q.      Does he have a temper?

14          A.      James is one of the most compassionate people I know.

15          Q.      Have you ever known him to hurt anybody?

16          A.      No.

17  (Dkt. No. 12, Ex. 35 at 1396.)

18          The second relevant exchange is this one between the prosecutor and Ms. Blanco:

19          Q.      Were you aware there was a body wire used in this case?

20          A.      Yes.

21          Q.      Are you aware that your daughter-in-law described how your son killed Mr.
                    Diorio?

22
    A.      No.
23
            Q.      You weren't aware of that?
24
            A.      No.
25

REPORT AND RECOMMENDATION
26  PAGE - 19

1   (Dkt. No. 12, Ex. 35 at 1402-03.)

2          Petitioner's counsel objected to these questions on the grounds that they grossly distorted what

3   was in tapes which had been admitted into evidence. (*Id.*, Ex. 35 at 1403-04.)  The prosecutor argued

4   that she had not mis-characterized the tapes and further argued that petitioner's counsel had opened

5   the door to the inquiry when he asked Ms. Blanco questions regarding petitioner's disposition.  (Dkt.

6   No. 12, Ex. 35 at 1403-04.)  The trial court agreed with petitioner's counsel that there was no

7   evidence in the tapes which had been admitted that described how petitioner killed Dan Diorio, and

8   explained the problem as follows:

9              Unfortunately, the inference is left as a result of that question that somewhere in the
               tapes that they didn't see is a description of how Mr. Garnett killed Mr. Diorio.  And
10             those tapes have not been admitted into evidence, and so to tempt them to speculate
               about a description of that sort being in tapes they they (sic) were not allowed to see
11             borders on reversible error here.

12   (*Id.*, Ex. 35 at 1405.)  The trial court subsequently sustained petitioner's counsel's objection, ordered

13   that the challenged question and answer be stricken from the record, and instructed the jury to

14   disregard both.  (*Id.*, Ex. 35 at 1408.)

15         When a prosecutor's conduct is placed in question, the standard of review is the "narrow one of

16   due process, and not the broad exercise of supervisory power."  *Donnelly v. DeChristoforo*, 416 U.S.

17   637, 642 (1974).  This Court cannot issue a writ of habeas corpus to state authorities unless the

18   prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial

19   of due process."  *Id.* at 643; *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  In order to assess a

20   claim that a prosecutor's comments constitute a due process violation, it is necessary to examine the

21   entire proceedings and place the prosecutor's statements in context.  *See Greer v. Miller*, 483 U.S.

22   756, 765-66 (1987).

23         The Court of Appeals rejected petitioner's prosecutorial misconduct claim on direct appeal,

24   and explained its decision as follows:

25

26   REPORT AND RECOMMENDATION
     PAGE - 20

1          Garnett argues that the prosecutor committed misconduct that violated his right
   to a fair trial.
2          During cross-examination of Garnett's mother, the prosecutor asked if she was
   aware that her son's wife described in a recorded statement how her son killed Diorio.
3  Although Garnett's wife's recorded statements–which were admitted into
   evidence–revealed some details of the crime, they did not describe how Diorio was
4  killed.  Garnett objected, moved to strike the question, and moved for a mistrial.
   Outside the presence of the jury, the trial court heard argument.  Garnett argued that
5  the question may permit the jury to infer that there were portions of his wife's
   statements that were excluded from trial in which she described how the murder was
6  committed.  The trial court ultimately granted Garnett's motion to strike the questions
   and responses, instructed the jury to disregard them, and denied his motion for a
7  mistrial.

8          To establish prosecutorial misconduct, the defendant has the burden of
   establishing the impropriety of the conduct as well as its prejudicial effect.  State v
9  Gentry, 125 Wn.2d 570, 640, 888 p.2d 1105 (1995).  This court reviews allegedly
   improper comments in the context of the entire argument, the issues in the case, the
10 evidence addressed in the argument and instructions given.  State v. Russell, 125
   Wn.2d 24, 85-86, 882 P.2d 747 (1994).  Where, as here, the defendant objects to the
11 prosecutor's remark, reversal is required if "there is a substantial likelihood that the
   alleged prosecutorial misconduct affected the verdict.'" State v. Luvene, 127 Wn.2d
12 690, 701, 903 P.2d 960 (1995) (quoting State v. Lord, 117 Wn.2d 829, 887, 822 P.2d
   177 (1991)).
13         The only argument Garnett makes to demonstrate prejudice is based on a
   presumption that the jury did not follow the trial court's instructions to disregard the
14 disputed questions and answers.  But a "jury is presumed to follow the court's
   instructions."  State v. Foster, 135 Wn.2d 441, 472, 957 P.2d 712 (1998).  Thus, we
15 presume the jury disregarded the prosecutor's statement that Garnett's wife described
   how Garnett killed Diorio.  Because Garnett makes no additional argument that he
16 suffered prejudice, we conclude that prosecutorial misconduct did not deprive him of a
   fair trial.
17
   (Dkt. No. 12, Ex. 5 at 17-18.)
18
19         The Court of Appeals applied the proper standard in reviewing petitioner's prosecutorial

20 misconduct claim, and reasonably concluded that the prosecutorial misconduct did not deprive

21 petitioner of a fair trial because the jury was instructed to disregard the disputed questions and

22 answers, and because the jury is presumed to follow the court's instructions.  Petitioner argues in

23 these proceedings that because the case against him rested entirely on circumstantial evidence, the

24 implication to the jurors that there was real evidence, which they had not heard, establishing that

25 petitioner had murdered Dan Diorio, could not be discounted despite the trial court's instruction to

REPORT AND RECOMMENDATION
26 PAGE - 21

the jury that they should disregard the challenged question and answer.  However, petitioner fails to offer any evidence or argument in these proceedings to persuade this Court that the prosecutor's comments were so egregious as to be incurable by the Court's instruction.

The decision of the Court of Appeals with respect to petitioner's prosecutorial misconduct claim was neither contrary to, nor did it constitute an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.  This Court is also satisfied that the decision of the Court of Appeals was based upon a reasonable determination of the facts in light of the evidence presented in the state court proceedings.   Accordingly, petitioner's federal habeas petition should be denied with respect to his fourth ground for relief.

<u>Ground Five: Government Misconduct and Mismanagement</u>

Petitioner asserts in his fifth ground for federal habeas relief that governmental misconduct and mismanagement denied him his right to due process.  At issue here is the trial court's denial of a motion to dismiss pursuant to Washington Superior Court Criminal Rule 8.3(b) which petitioner brought mid-way through his criminal trial.  Petitioner alleged in his motion to dismiss that the State engaged in mismanagement and other misconduct when it: (1) failed to timely disclose evidence of Kristine Stafford's and Kymberly Garnett's drug use during the time the body wire was in operation; (2) failed to adequately investigate a witness who may have revealed information exonerating petitioner; (3) instructed witnesses not to have contact with defense counsel without first advising the State; (4) failed to make witnesses available in a timely fashion; and (5) failed to comply with court orders during the course of the trial.  (*See* Dkt. No. 12, Ex. 13, Appendix B.)  The trial transcript reflects that the court heard extensive argument from the parties before denying the motion to dismiss.  (*See id.*, Ex. 33 at 1006-1044.)  The transcript further reflects that the trial court made detailed findings to support its conclusion that the state had not acted improperly.  (*See id.*, Ex. 33 at 1044-1049.)

REPORT AND RECOMMENDATION
PAGE - 22

1   Petitioner raised this issue in his personal restraint petition, and the Court of Appeals rejected

2   the claim, finding that the trial court did not abuse its discretion in denying the motion to dismiss

3   under CrR 8.3(b).  (Dkt. No. 12, Ex. 16.)  The Supreme Court of Washington likewise rejected

4   petitioner's claim that the trial court erred in denying his motion to dismiss.  (*See id.*, Ex. 23.)

5   Petitioner complains in these proceedings that each of the state courts concluded there was

6   insufficient evidence to support his claims of governmental misconduct, and yet denied him the

7   opportunity to present any such evidence.  Respondent argues that petitioner's claim concerning the

8   trial court's denial of his motion to dismiss under CrR 8.3(b) is without merit because "the state court

9   rule he cites is not constitutionally mandated, and to the extent he is basing his claim on CrR 8.3(b),

10  he has failed to state a constitutional claim for relief."  (Dkt No. 9 at 30.)  Because petitioner is

11  essentially contesting the state courts' failure to grant him relief pursuant to a state court rule of

12  procedure, this Court must concur that petitioner has not stated a cognizable claim for federal habeas

13  relief.  Accordingly, petitioner's federal habeas petition should be denied with respect to his fifth

14  ground for relief.

15  <u>Ground Six:  Erroneous Jury Instruction</u>

16  Petitioner asserts in his sixth  ground for federal habeas relief that he was denied his right to a

17  fair trial, and that the State was relieved of the burden of proving every element of the crime charged,

18  when the trial judge erroneously instructed the jury.  The jury instruction at issue in these

19  proceedings is Instruction Number 8, the "to convict" instruction.  The challenged instruction first set

20  forth the elements of the alternative charges of premeditated first degree murder and first degree

21  felony murder.  It then stated:

22          If you find from the evidence that each and every element of "A" or "B", or
        "A" and "B", has been proved beyond a reasonable doubt, then it will be your duty to
23      return a verdict of guilty to the charge of murder in the first degree.  The elements in
        "A" and "B" are alternatives.  To return a verdict of guilty, all twelve jurors need not
24      agree as to which alternative, "A" or "B" as been proven beyond a reasonable doubt.

25

REPORT AND RECOMMENDATION
26  PAGE - 23

1    However, each juror must find that all of the elements in either "A" or "B" exist
     beyond a reasonable doubt.

2

3         On the other hand if after weighing the evidence, you have a reasonable doubt
     as to any element in "A" and a reasonable doubt as to any element in "B" then it will
     be your duty to return a verdict of not guilty to the charge of murder in the first
4    degree.

5    (Dkt. No. 12, Ex. 15, App. C, Instruction No. 8.)

6         Specifically at issue here is the description of the elements of premeditated first degree

7    murder and the elements of felony murder as alternatives.  Petitioner contends that describing the

8    elements of the two crimes as alternatives constitutes a clear misstatement of the law and allows for

9    the potential swapping of elements.

10        The question that the federal habeas court must address when reviewing claims of instructional

11   error in a state court trial is "whether the ailing instruction by itself so infected the entire trial that the

12   resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).  Before a

13   federal habeas court can overturn a state court conviction in which an allegedly erroneous instruction

14   was given, "it must be established not merely that the instruction is undesirable, erroneous, or even

15   'universally condemned,' but that it violated some right which was guaranteed to the defendant by the

16   Fourteenth Amendment." *Cupp*, 414 U.S. at 146.  The Supreme Court makes clear that the

17   challenged instruction "may not be judged in artificial isolation," but must be considered in the context

18   of the instructions as a whole and the trial record. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (citing

19   *Cupp*, 414 U.S. at 147).

20        The Due Process Clause of the Fourteenth Amendment requires that the prosecution prove

21   beyond a reasonable doubt each element of the charged offense.  *Carella v. California*, 491 U.S. 263,

22   265 (1989)(citing *In re Winship*, 397 U.S. 358, 364 (1970).  Thus, jury instructions which relieve the

23   State of this burden violate a defendant's due process rights." *Carella*, 491 U.S. at 265.

24        Petitioner presented his jury instruction claim to the State appellate courts in his personal

25

26   REPORT AND RECOMMENDATION
     PAGE - 24

1   restraint petition.  The Court of Appeals rejected the claim, concluding that though "inartfully

2   worded" the challenged instruction was not an erroneous statement of the law.  (Dkt. No. 12, Ex. 16

3   at 5-6.)  The Supreme Court likewise rejected petitioner's jury instruction claim.  The Supreme Court

4   Commissioner explained the ruling as follows:

5          Mr. Garnett . . . contends that the trial court, in instructing the jury on the
       alternatives of first degree intentional murder (labeled "A") and first degree felony
6      murder (labeled "B"), improperly "invited" the jury to "mix and match" the elements
       of the two alternatives to reach unanimity by saying that "[t]he elements in 'A' and
7      'B' are alternatives."  In rejecting this argument, the Acting Chief Judge determined
       that, viewed as a whole, the "to convict" instruction properly informed the jury that it
8      had to find all of the elements of either premeditated murder or felony murder, or
       both, in order to convict Mr. Garnett.  She also noted that the law does not require
9      unanimity as to which of two "alternative means" the defendant employed in
       committing a "single" crime when substantial evidence supports both means.

10
           Mr. Garnett is correct that this case does not involve alternative "means" of
11     committing the "same" crime.  Mr. Garnett was charged with *aggravated* first degree
       murder and first degree felony murder.  Aggravated first degree murder is based only
12     on premeditated intentional murder.  RCW 10.95.020.  Thus, aggravated first degree
       murder and first degree felony murder are two different offenses, not different means
13     of committing the same offense.  *State v. Meas*, 118 Wn. App. 297, 302-03, 75 P.3d
       998 (2003), *review denied*, 151 Wn.2d 1020 (2004).

14
           Nonetheless, the Acting Chief Judge correctly determined that the instruction
15     as a whole did not misstate the law.  As she observed, the instruction clearly informed
       the jury that it had to find *all* of the elements of "A" or *all* of the elements of "B" or
16     all of the elements of both.  The jury could not have reasonably misread the
       instruction allowing it to "mix and match" elements of the two alternatives to reach a
17     hybrid verdict.[5]

18         Moreover, it is evident from the materials Mr. Garnett presents that he
       proposed a "to convict" instruction stating that the "elements in 'A' and 'B' are
19     alternatives."  Therefore, if that statement was erroneous, Mr. Garnett invited the
       error.  *State v. Gentry*, 125 Wn.2d 570, 645-46, 888 P.2d 1105 (1995).

20
    (Dkt. No. 12, Ex. 23 at 2-3.)
21
           The state appellate courts' conclusion that the instruction did not misstate the law is entitled
22
    to deference.  *See Estelle*, 502 U.S. at 67-68 (it is not the province of federal habeas courts to
23

24         [5] [Court of Appeals' footnote] The jury ultimately returned a special verdict finding Mr.
       Garnett guilty of intentional murder.  It thus did not enter a verdict for felony murder.
25

    REPORT AND RECOMMENDATION
26   PAGE - 25

reexamine state court conclusions regarding matters of state law).  And, when the challenged

instruction is read in conjunction with the special verdict forms completed by the jurors, there can be

no question that the jury properly interpreted and applied the instruction.  Special verdict form A

read as follows:

> 1.   Were you able to unanimously agree beyond a reasonable doubt that the
>      defendant, James Garnett, committed premeditated murder in the first degree?
>      (Alternative A in INSTRUCTION NO. __8__ )
>      [ ] Yes                    [ ] No
>
>      ***If you answered "yes" to Special Verdict Question 1, please complete
>      "Special Verdict Form B".  If you answered "no", you do not need t
>      complete "Special Verdict Form B".***

(Dkt. No. 12, Ex. 15, Appendix E.)

The jurors answered the question presented in special verdict form A in the affirmative and

then moved on to special verdict form B which asked the jury to make findings regarding aggravating

circumstances.  (*See id.*, Appendix F.)  Special verdict form B begins with the language "We, the

jury, having found the defendant guilty of premeditated murder in the first degree (Alternative A) as

charged in the information, make the following answers to the questions submitted by the court."  *Id.*

These documents, when read together, satisfy this Court that the challenged instruction

comports with due process and that the state appellate courts properly rejected the claim.

Accordingly, this Court recommends that petitioner's federal habeas petition be denied with respect

to his sixth ground for relief.

<u>Ground Eight: Fourth Amendment</u>

Petitioner asserts in his eighth ground for relief that his Fourth Amendment rights were

violated when the trial court erroneously permitted evidence to be admitted at trial which was

obtained through an unlawfully obtained search warrant.

A Fourth Amendment claim is not cognizable in a federal habeas proceeding if a petitioner

has had a full and fair opportunity to litigate the claim in state court.  *Stone v. Powell*, 428 U.S. 465,

REPORT AND RECOMMENDATION
PAGE - 26

1    481-82 (1976).  The relevant inquiry is whether the petitioner was afforded a full and fair hearing,

2    not whether the state court reached a correct resolution.  *See Siripongs v. Calderon*, 35 F.3d 1308,

3    1321 (9th Cir. 1994)(defendant had a full and fair opportunity where he made his Fourth Amendment

4    argument in both state trial and appellate courts), *cert. denied*, 115 S.Ct. 1175 (1995).

5        The record before this Court reveals that petitioner, in fact, had a full and fair opportunity to

6    litigate his Fourth Amendment claim in the state courts.  (*See* Dkt. No. 12, Ex. 5.)  Accordingly,

7    petitioner's federal habeas petition should be denied with respect to his eighth ground for relief.

8                                    <u>CONCLUSION</u>

9        For the reasons set forth above, this Court recommends that petitioner's federal habeas petition

10   be denied and that this action be dismissed with prejudice.  A proposed order accompanies this Report

11   and Recommendation.

12       DATED this 24th day of April, 2006.

13

14                                   MONICA J. BENTON
                                     United States Magistrate Judge
15

16

17

18

19

20

21

22

23

24

25

26   REPORT AND RECOMMENDATION
     PAGE - 27