1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9

10

| | |
|---|---|
| JAMES S. GARNETT, | CASE NO. C05-1438 MJP |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART RESPONDENT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| RICHARD MORGAN, | |
| Defendant. | |

11
12
13
14
15

16   This comes before the Court on Respondent's motion for summary judgment.  Having

17 reviewed the motion, the response, and the reply (Dkt. No. 111, 114, 115), and all related

18 documents, the Court DENIES in part and GRANTS in part Respondent's motion for summary

19 judgment.

20   **Procedural History**

21   Petitioner James Garnett ("Garnett") was convicted of aggravated first degree murder and

22 sentenced to life in prison without the possibility of parole in August 2000.  (Dkt. No. 12, Ex. 1.)

23 The jury found Garnett guilty of robbing and murdering a mentally ill man, Dino Dan Diorio

24 ("Diorio").  (Id.)  Garnett filed a petition for federal habeas relief under 28 U.S.C. § 2254,

1   challenging the validity of his conviction and the Court granted Garnett habeas relief based on

2   prosecutorial misconduct and improper jury instructions.  (Dkt. No. 58.)

3        At the time, the Court declined to rule on whether Garnett was entitled to relief based on

4   government misconduct because gaps in the record required an evidentiary hearing and other

5   grounds for relief existed.  (Id.)  The Ninth Circuit, however, reversed and remanded.  (Dkt. No.

6   78.)  On remand, the Court has scheduled an evidentiary hearing to consider Garnett's remaining

7   argument for habeas relief.  (Dkt. No. 129.)  Specifically, Garnett contends the State violated its

8   Brady v. Maryland, 373 U.S. 83, 87 (1963), obligations when it withheld information about a

9   $5,000 reward a key witness received in exchange for her assistance and testimony at Garnett's

10  trial.  While Garnett also alleges the State failed to disclose that the witness avoided being

11  extradited to Montana, was allowed to participate in drug court despite her criminal history, and

12  received concessions for additional felony offenses, Garnett fails to contest Respondent's motion

13  for summary judgment with respect to these benefits.  The Court finds Garnett has conceded

14  these allegations and focuses only on whether summary judgment is appropriate with respect to

15  the reward money.  Respondent now submits this motion for summary judgment.

16                                    **Factual Background**

17        Diorio was last seen alive on September 14, 1999.  Pursuant to a request by Diorio's

18  mother, the Carole Sund/Carrington Memorial Reward Foundation ("Foundation") posted a

19  $5,000 reward for information leading to Diorio's safe return or the arrest and conviction of the

20  persons responsible for his murder.  (Dkt. No. 111, Ex. 18.)  The reward was announced at a

21  press conference on October 27, 1999 and a story was published in the Skagit Valley Herald the

22  same day.  (Dkt. No. 55, Ex. 2 at 6-9.)  Both the press conference and news article were known

23  to Garnett given that his request for change of venue at trial included these facts.  (Id.)

24

ORDER GRANTING IN PART AND DENYING IN
PART RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT- 2

1    On November 2, 1999, the police arrested Garnett for Diorio's murder.  At the time,

2    Garnett's wife, Kymberly, was in custody at Skagit County Jail on unrelated drug possession

3    charges.  (Dkt. No. 114, Anderson Depo., Ex A at 22-23.)  While in jail, Garnett's wife met

4    Kristine Anderson, formerly known as Kristine Stafford ("Anderson"), who was also in custody.

5    Anderson became a key witness in Garnett's trial as Kymberly confided to her details of the

6    Diorio murder upon release from jail.  (Id.)  Kymberly was eventually charged along with

7    Garnett for Diorio's murder on November 19, 1999.  Skagit Co. Sup. Ct. No. 99-1-00687-8.

8    On December 15, 1999, Anderson contacted Prosecuting Attorney Thomas Verge

9    ("Verge") about Diorio's murder and Verge notified the investigating officers.  (Id. at 24-25.)

10   On December 16, 17, and 21, 1999, Anderson wore a body wire, prompted Kymberly to talk

11   about the murder, and recorded their conversations.  (Id. at 26.)  Anderson testified about her

12   conversations with Kymberly at both Garnett's trial and later at Kymberly's trials.  (Dkt No. 12,

13   Ex. 33; Dkt. No. 114, Ex. C at 53.)

14   In preparation for Garnett's trial, Anderson met with Skagit County prosecutor Karen

15   Calhoun ("Calhoun") on several occassions.  (Dkt. No. 114, Calhoun Depo. Ex. B at 34:1-8;

16   43:14-22 and 44:3-9.)  Although the parties dispute whether a promise or quid pro quo was

17   actually made, Anderson was informed of the $5,000 reward during these meetings. (Dkt. No.

18   114, Anderson Depo. Ex. A, at 27-29.)  In addition, before testifying, Anderson met with

19   Garnett's defense counsel, who asked Anderson about the benefits she received for her

20   testimony. At the interview, the State prosecutor answered on Anderson's behalf that the State

21   had quashed Anderson's warrants.  (Dkt. No. 114, Ex. Q, at 108.)

22   At Garnett's trial held August 2000, Anderson admitted on direct and cross that she had

23   been using illegal drugs when talking with Kymberly, that she was convicted for crimes of

24

ORDER GRANTING IN PART AND DENYING IN
PART RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT- 3

1  dishonesty in Washington and Montana, and that warrants for her arrest had been quashed.  (Dkt.

2  No. 12, Ex. 33 at 1183-84, 1192-93, 1195, 1205-07, 1210-18).  Kymberly also acknowledged

3  that the State had paid for her travel from Montana and Michigan in order to testify in May and

4  August 2000, respectively. (Id. at 1203, 1214.)

5      Garnett's counsel did not specifically ask about the reward and Anderson did not mention

6  the reward when asked about other benefits received for cooperating with the government.  (Dkt.

7  No. 114, Ex. D, at 66: 6-7.)  Garnett's counsel, however, did question other witnesses about the

8  reward and the lead investigating officer testified separately about the existence of the

9  Foundation's reward. (Dkt. No. 12, Ex. 31 at 736-39.)  At the conclusion of trial, Garnett was

10  convicted of one count of aggravated first degree murder.  (Dkt. No. 12, Ex. 1.)  On August 31,

11  2000, Garnett was sentenced to life imprisonment without the possibility of parole. (Id.)

12      On October 30, 2000, Calhoun drafted a letter recommending Anderson receive the

13  reward money.  (Dkt. No. 114, Ex. O at 96.)  But the letter was not, at this time, sent to the

14  Foundation, who was ultimately responsible for disbursing the reward.  Before further steps were

15  taken with respect to the reward, Anderson first testified at Kymberly's trials, the first of which

16  ended in a hung jury and the second of which concluded in a conviction in August 2001. (Dkt.

17  No. 114, Ex. C at 53:11-23.)

18      One month after Kymberly was convicted, on September 21, 2001, Verge met with

19  Anderson to discuss the Foundation's reward.  (Dkt. No. 111, Ex. 22.)  At the meeting, Verge

20  expressed concern that Anderson would use the money to further her drug use.  (Dkt. No. 111,

21  Verge Dep. Ex. 22.)  Nevertheless, on October 19, 2001, Verge and the investigating police

22  officers signed a letter to the Foundation recommending that the reward be paid to Anderson.

23  (Id. at Ex. 23.)  The Foundation followed their recommendation and disbursed the reward in

24

1  November 2001.  (Dkt. No. 39-2, Ex. F.)  The reward was paid in part to Ms. Anderson and in

2  part to local courts for restitution Anderson owed for other criminal sentences.  (Id.)

3        Garnett learned about the reward in 2005 when Kymberly's defense counsel

4  independently discovered the reward in preparation for her third trial for Diorio's murder.

5  Kymberly's prior conviction had been overturned on appeal.  (Dkt. No. 114, Ex. J at 83-85.)

6  During Kymberly's third trial, the prosecutor filed a declaration stating he had found a file

7  labeled "Garnett Reward Letter" which "show[ed] that the Prosecuting Attorney took charge of

8  administering the payout of the $5000."  (Dkt. No. 114, Ex. S at 113-115.)  With the reward

9  disclosed, Kymberly's third trial resulted in a hung jury.

10                                                **Analysis**

11  I.       Summary Judgment Standard

12        Summary judgment is proper if the pleadings, depositions, answers to interrogatories,

13  admissions on file, and affidavits show that there are no genuine issues of material fact for trial

14  and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). Material

15  facts are those "that might affect the outcome of the suit under the governing law." Anderson v.

16  Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The underlying

17  facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec.

18  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

19  The party moving for summary judgment has the burden to show initially the absence of a

20  genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159, 90

21  S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its initial burden, the burden

22  shifts to the nonmoving party to establish the existence of an issue of fact regarding an element

23

24

1    essential to that party's case, and on which that party will bear the burden of proof at trial.

2    Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

3       II.    Brady Violation

4       Respondent moves for summary judgment, arguing there is no evidence that the State

5    committed a Brady violation.  In reviewing the record, the Court is not persuaded and finds a

6    factual dispute remains as to whether the State improperly withheld information about whether it

7    was considering Anderson for the $5,000 reward.

8       Under Brady v. Maryland, "the suppression by the prosecution of evidence favorable to

9    an accused upon request violates due process where the evidence is material either to guilt or to

10   punishment, irrespective of the good faith or bad faith of the prosecution."  373 U.S. 83, 87

11   (1963).  Evidence is "material" if there is a reasonable probability that, had the evidence been

12   disclosed to the defense, the result of the proceeding would have been different.  United States v.

13   Bagley, 473 U.S. 667, 682 (1985).  To establish a Brady claim, a habeas petitioner must show

14   the evidence in question is favorable to the defendant, meaning that it had either exculpatory or

15   impeachment evidence, the state suppressed the evidence, and  prejudice ensues from the

16   suppression.  Strickler v. Greene, 527 U.S. 263, 281-82 (1999); Silva v. Brown, 416 F.3d 980,

17   985-86 (9th Cir. 2005).

18      Respondent argues the Brady standard is not met because (1) Garnett cannot show the

19   prosecution withheld any impeachment evidence extant at the time of Garnett's trial, (2) the

20   prosecution did not withhold anything that Garnett's defense counsel did not already know or

21   should have known, and (3) Anderson's testimony was not material to Garnett's trial.  None of

22   Respondent's arguments are persuasive.

23

24

ORDER GRANTING IN PART AND DENYING IN
PART RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT- 6

1    First, Respondent contends the State could not have disclosed Anderson's receipt of the

2  reward because the decision to recommend Anderson for the reward was not made until October

3  2001, one year after Garnett's trial.  (Dkt. No. 111, at 14.)  This argument fails because,

4  regardless of whether a definitive decision was made regarding the reward before trial, even

5  implicit or tacit promises to testifying witnesses must be disclosed under <u>Brady</u>.  <u>See, e.g.,</u>

6  <u>Hovey v. Ayers</u>, 458 F.3d 892, 919 (9th Cir. 2006); <u>United States v. Shaffer</u>, 789 F.2d 682, 690

7  (9th Cir. 1986).

8    Here, a genuine issue of material fact remains as to whether suggestions about the reward

9  were made to Anderson when she was deciding to testify.  (<u>See</u> Dkt. No. 114, Ex. A, at 29.)  The

10  depositions of prosecuting attorney Calhoun and Anderson suggest a reference to the reward was

11  made in persuading Anderson to testify.  Calhoun stated, "[E]verybody was aware" that the state

12  was considering Anderson for the reward prior to trial.  (Dkt. No. 114, Ex. B, at 46:10-14.)

13  Likewise, Anderson stated it was her understanding that "it would be highly recommended that

14  [she] get the money."  (Dkt. No. 114, Ex. A, at 28:17-18.)  While the State is not obligated to

15  disclose Anderson's personal beliefs or hopes, the State's actions or promises giving rise to those

16  beliefs are.  The absence of a binding contract or explicit agreement between Anderson and the

17  State does not absolve the State of its <u>Brady</u> obligations.  A standard plea agreement is often

18  subject to <u>Brady</u> disclosure yet only promises that the government will "consider"

19  recommending a defendant receive a lower sentence in exchange for their cooperation.  Although

20  a decision to provide assistance to a witness <u>after</u> trial is not subject to disclosure under <u>Brady</u>, a

21  preexisting deal or implicit promise <u>before</u> trial is.  The Court finds a factual dispute remains

22  with respect to this issue, precluding summary judgment.

23

24

ORDER GRANTING IN PART AND DENYING IN
PART RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT- 7

1    Second, Respondent argues no <u>Brady</u> violation occurred because the prosecution did not

2    withhold anything that Garnett's defense counsel did not already know or should have known.

3    Specifically, Garnett knew of the existence of the reward given that a copy of the Foundation's

4    announcement of the the reward was admitted at trial and a government witness testified about

5    the Foundation's reward offer.  (Dkt. No. 12, Ex. 28, at 184-86; Ex. 31, at 736-39.)  The Court

6    finds Respondent's argument misplaced.  Even though the existence of the reward was known,

7    defendants are not required to "scavenge for hints of undisclosed <u>Brady</u> material when the

8    prosecution represents that all such material has been disclosed."  <u>Banks v. Dretke</u>, 540 U.S. 668,

9    695 (2004).

10   Here, there is evidence that Garnett's defense counsel may have been misled into

11   believing Anderson was not being considered for the reward.   There is an implication that

12   prosecutors instructed Anderson not to affirmatively disclose details about the reward to the

13   defense.  (Dkt. No. 114, Ex. A, at 28.)  When Garnett's defense counsel started to inquire about

14   benefits Anderson had received in exchange for her cooperation, a prosecutor spoke up and

15   answered Anderson's warrants had been quashed.  (Dkt. No. 114, Ex. Q, at 108.)  In addition, at

16   trial, the State put on the lead investigating officer who testified that none of the state's witnesses

17   had "asked" for the reward.  (<u>Id.</u> at Ex. E at 69:106.)  On summary judgment, the Court is not

18   able to weigh credibility of the claims but must accept them as presented.

19   Considering that Garnett's defense counsel may have been misled into believing all

20   material facts about Anderson had been provided, the Court is unwilling to find Garnett's

21   defense counsel knew or should have known about Anderson's possible receipt of the reward.  In

22   his declaration, Garnett's defense counsel stated he "had no knowledge before or during Mr.

23   Garnett's trial that the state was considering recommending that [Anderson] receive reward

24

ORDER GRANTING IN PART AND DENYING IN
PART RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT- 8

1    money" and believed all impeachment material with respect to Anderson had been disclosed.[1]

2    (Dkt. No. 114, Ex. H, ¶ 6.)  Since a genuine issue of material fact exists, summary judgment is

3    inappropriate at this time.

4         Finally, Respondent argues Anderson's testimony was not material to Garnett's trial

5    because impeaching Anderson on the basis of the reward money would not have affected the

6    outcome of the trial.  Specifically, Respondent contends Anderson was thoroughly impeached for

7    other reasons and incriminating recordings of Anderson's conversations with Kymberly would

8    have still been admissible regardless of impeachment evidence.

9         The Court finds Respondent's argument misstates the <u>Brady</u> materiality standard.  As

10   stated in <u>Kyles v. Whitley</u>, the "question is not whether the defendant would more likely than not

11   have received a different verdict with the evidence, but whether in its absence he received a fair

12   trial." 514 U.S. 419, 434 (1995). "A 'reasonable probability' of a different result is [ ] shown

13   when the government's evidentiary suppression 'undermines confidence in the outcome of

14   trial.'" <u>Id.</u>; <u>see also</u> <u>Strickler v. Greene</u>, 527 U.S. 263, 288 (1999)(affirming the standard set forth

15   in <u>Kyles</u>).

16        Here, Anderson was a key witness for the prosecution, whether for her participation in

17   the investigation or for her testimony.  Calhoun, the prosecuting attorney stated in her deposition,

18   "without [Anderson], it was a much more circumstantial case.  And it—[Anderson's]

19   involvement made our case stronger."  (Dkt. No. 114, Ex. B at 49: 16-21.)  In her post-trial letter,

20   Calhoun wrote, "without [Anderson], I do not know if the state would have been successful in

21

22   _____

23   [1] After filing this motion for summary judgment, Respondent requested an extension of
     discovery deadlines in order to take the deposition of Garnett's defense counsel, Mr. Mark E.
     Seitter. (Dkt. No. 123.) The Court granted Respondent's request (Dkt. No. 129) and suspects
24   Mr. Seitter's deposition will provide further factual development on the issue.

ORDER GRANTING IN PART AND DENYING IN
PART RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT- 9

1  convicting these murderers." (Dkt. No. 114, Ex. O, at 96.)  Considering Anderson's importance

2  to the government's case, a failure to disclose all means of attacking her credibility casts doubt

3  on the fairness of Garnett's trial.  While Anderson was impeached based on her prior criminal

4  history, a monetary motivation for testifying may have reasonably resonated differently with a

5  jury.  If determined that a promise was made to Anderson, this fact may would have been

6  material and subject to <u>Brady</u> disclosure.

7                                                **Conclusion**

8          In sum, the Court DENIES in part Respondent's motion for summary judgment.   A

9  genuine issue of material fact exists as to whether the State improperly withheld information

10 regarding Anderson's receipt of the $5,000 reward.  The Court, however, GRANTS

11 Respondent's request to limit the scope of the evidentiary hearing.  Since there is no evidence

12 that the State violated its <u>Brady</u> obligations with respect to Anderson's extradition, participation

13 in drug court, or receipt of concessions for felony offenses, the Court will not consider these

14 arguments at the hearing.  The Court will only consider the issue of whether Garnett is entitled to

15 habeas based on the State's failure to disclose information about the reward.

16          The clerk is ordered to provide copies of this order to all counsel.

17          Dated this 3rd day of December, 2010.

18

19

20          Marsha J. Pechman

21          United States District Judge

22

23

24

ORDER GRANTING IN PART AND DENYING IN
PART RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT- 10