1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10

JAMES S. GARNETT,

CASE NO. 2:05-CV-01438-MJP

11

Petitioner,

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

12

v.

13

RICHARD MORGAN,

14

Respondent.

15
16

**I.      Introduction**

17      An evidentiary hearing was held on January 24, 2011.  Petitioner Garnett was represented

18  by Assistant Public Defender Jennifer Wellman.  Respondent was represented by Senior Counsel

19  to the Attorney General Paul Weisser.

20      **II.      Findings of Fact**

21  1.  Petitioner James S. Garnett is a Washington State prisoner who was convicted by jury

22      verdict in Skagit County Superior Court of one count of aggravated first degree murder

23      for the September 14, 1999 murder of Dino Dan Diorio.

24

FINDINGS OF FACT AND CONCLUSIONS OF
LAW- 1

2.   The trial in Petitioner's case, <u>State v. Garnett</u>, Skagit County Superior Court No. 99-1-00636-3, began on August 16, 2000.

3.   In October 1999, before the victim's body was found, the victim's mother Meg Diorio, contacted the Carole Sund/Carrington Memorial Reward Foundations ("the Foundation"). The Foundation, through its Executive Director Kim Peterson, agreed to post a $5000 reward for information leading to Dino Dan Diorio's safe return or the arrest of the person or persons responsible for his murder.

4.   The reward offer was announced by a representative of the Foundation at a press conference in Mount Vernon, Washington on October 27, 1999.  The reward offer was mentioned in an article in the local newspaper that same day and was mentioned in a police report filed by Sergeant Wayne Dowhaniuk of the Mount Vernon Police Department, who also attended the press conference.

5.   Sergeant Dowhaniuk prepared a missing person flyer regarding Diorio's disappearance and referred to the $5000 reward.  The flyer was distributed within Skagit County and later admitted as State's Exhibit 23 at Petitioner's trial.

6.   One of the State's witnesses at Petitioner's trial was Kristine Stafford, now known as Kristine Anderson.

7.   Anderson knew Petitioner's wife, Kymberly Garnett, from the time the two women were detained in Skagit County Jail together in November 1999.  She did not know Petitioner, nor was she a witness to the murder of Diorio.

8.   After the two women were released from jail, they began a drug binge.  Kymberly Garnett privately made certain incriminating statements to Anderson about the murder. Anderson contacted the Skagit County Prosecuting Attorney, Thomas Verge, on

FINDINGS OF FACT AND CONCLUSIONS OF
LAW- 2

1    December 15, 1999, to report what she had heard.  Verge contacted the law enforcement

2    officer investigating the murder, who then contacted Anderson.

3    9.  Anderson agreed to wear a hidden "body wire" audio recording device during her future

4        meetings with Kymberly Garnett.  Anderson met with Kymberly Garnett while wearing

5        the body wire on December 16, 17, and 21, 1999, and several hours of the women's

6        conversations were recorded.  During the meetings, Anderson prompted Kymberly

7        Garnett to talk about the murder while consuming methamphetamine and heroin.

8    10. In the tape recordings, Kymberly Garnett never "confessed" to the murder nor did she

9        ever state that Garnett was guilty.  Rather, she made ambiguous statements in response to

10       Anderson's questions that suggested she and Petitioner were involved in the crime.

11   11. On November 19, 1999, Kymberly Garnett was also charged with Diorio's murder.  She

12       was tried separately after Petitioner's August 2000 trial.

13   12. The Skagit County Prosecuting Attorney, through law enforcement, used Anderson to

14       listen to the tapes and edit transcripts for use at trial.

15   13. Anderson was not aware of the Foundation's reward offer during the times she was

16       wearing the body wire, listening to the recordings or editing the transcripts of the

17       recordings.

18   14. Skagit County Prosecuting Attorney Thomas Verge and Deputy Prosecuting Attorney

19       Karen Calhoun prosecuted Petitioner's case.

20   15. Once a reward is posted, the Foundation defers to law enforcement regarding who, in any

21       given case, should receive a reward.  This practice was followed in State v. James

22       Garnett.

23

24

FINDINGS OF FACT AND CONCLUSIONS OF
LAW- 3

16. Law enforcement kept the Foundation apprised of the Diorio investigation and the prosecution of James and Kymberly Garnett.

17. The state met with Anderson in preparation for Petitioner's trial on several occasions to prepare her testimony and to ensure that she remained drug-free.

18. The state arranged for Anderson's warrants to be quashed and provided her transportation from her home in Montana where she was in a troubled marriage.  She was in constant contact with law enforcement and the prosecutors' staff.

19. Prior to her testimony, Anderson was prepared by the prosecutors.  During a preparatory session, she was told of the Foundation reward money.

20. Anderson understood that she needed the prosecutors' recommendation to receive the $5000 reward and that the recommendation was dependent upon her continued cooperation and testimony at trial.  The money was important to Anderson and represented a significant sum to her.

21. The prosecutors believed that Anderson's testimony was necessary to their case.

22. Petitioner's trial counsel were never told of the reward, either prior to or during their interview of Anderson, prior to her trial testimony, or at any time during trial.

23. On March 7, 2000, the defense filed an Omnibus Application in which it requested, *inter alia,* material or information discoverable under Brady v. Maryland, 373 U.S. 83 (1963), and any information as to whether a state witness has been promised or granted immunity or provided any other consideration.

24. On April 20, 2000, the trial court granted that request and specifically directed the state to, *inter alia,* "disclose evidence in plaintiff's position, favorable to defendant on the issue of guilt."

FINDINGS OF FACT AND CONCLUSIONS OF LAW- 4

25. On August 23, 2000, during the second week of Petitioner's trial, Petitioner moved to dismiss the case pursuant to Wash. Cr.R. 8.3(b) and the state and federal constitutions. The motion was based in part upon the state's failure to disclose, before the August 21, 2000 defense interview of Anderson, the extent of Anderson's drug use during the investigation.

26. At no time prior to or during trial did the prosecution inform the defense that the state had promised to consider "recommending" Anderson for the reward.

27. During Anderson's meetings with the prosecutors in preparation for her testimony, she was given instructions about testifying.  She was told not to volunteer information unless specifically asked about it.  Anderson interpreted this to mean that she was not to talk about any reward recommendation unless specifically asked.

28. The defense first met with Anderson in person on August 21, 2000, nearly one week after the trial against Petitioner had begun.  During their pre-testimony interview of Anderson, defense counsel asked what the prosecutors did for her on her warrants.  The prosecutor interrupted and answered on Anderson's behalf, saying only that the state had quashed a warrant out of Snohomish and a Burlington warrant.

29. The defense did not find out about the recommendation for the reward, the transport from Montana or the State's efforts to keep Anderson clean and sober.

30. Anderson was subpoenaed as a state's witness for Petitioner's trial and testified on August 24, 2000.

31. Two excerpts from Anderson's body wire recordings were ruled admissible at Petitioner's trial.  In one of those excerpts, Kymberly Garnett described her disposing of Petitioner's bloody clothing on the night of the murder.  In the second excerpt, Kymberly

Garnett referred to her and her husband's theft of a stun gun from a sporting goods store in Bellingham, Washington, and suggested the stun gun was used during the murder of Diorio.

32. In her direct testimony, Anderson described her meetings and conversations with Kymberly Garnett in November and December 1999.  She had no first-hand knowledge of Petitioner's crime. The only evidence Anderson provided that indirectly incriminated Petitioner was contained on the body wire tapes.

33. The two excerpts from Anderson's taped conversations with Kymberly Garnett that had been ruled admissible were played for the jury during Anderson's testimony, and transcripts of those excerpts were provided to the jury during the playing of the tapes. Anderson worked with law enforcement to ensure the accuracy of the transcripts.

34. Anderson offered no direct testimony or knowledge about the murder at trial.  Her testimony was limited to the description of her contacts with Kymberly Garnett, her wearing of the body wire, and the authentication of the tapes and transcripts.

35. The police testified at trial that none of the witnesses "asked" for the reward.  Also, the prosecutor asked Anderson what she had asked of the state.  Finally, the prosecutor in closing argument claimed that Anderson did not get anything.

36. Petitioner's trial concluded with the return of the jury's verdict on August 31, 2000. Petitioner was sentenced to life imprisonment without the possibility of parole on September 21, 2000.

37. After Petitioner's conviction, on October 30, 2000, Calhoun drafted a letter recommending that Anderson receive the reward money.  The letter apparently was not sent to the Foundation at that time, however, in the letter Calhoun expressed that she did

1    not know whether the state would have been successful in convicting the Garnetts

2    without Anderson.

3  38. Before further steps were taken with respect to the reward, Anderson first testified

4    Kymberly Garnett's trials, the first of which ended in a hung jury and the second of

5    which ended in a conviction in August 2001.

6  39. On September 12, 2001, Verge met with Anderson to discuss the Foundation's reward.

7    At that time Verge had not made up his mind about whether to recommend Anderson

8    receive the reward, and he told Anderson that he would advise her of the final

9    recommendation.

10 40. On October 19, 2001, Verge, Dowhaniuk, and a representation from the Skagit County

11   Sheriff's Office signed a joint letter to the Foundation recommending that Anderson

12   receive the reward.  They further recommended, however, that a portion of the reward be

13   used to satisfy Anderson's legal financial obligations from several of her criminal cases.

14 41. The Foundation agreed with those recommendations.  A total of $2097.92 was paid to

15   satisfy Anderson's legal financial obligations.  On November 27, 2001, Anderson

16   received a check for the remainder of the reward in the amount of $2902.08.

17 42. Kymberly Garnett's conviction was later overturned on appeal and her third trial resulted

18   in a hung jury.

19   **III     Analysis**

20 43. In Brady v. Maryland, the Supreme Court held "that the suppression by the prosecution

21   of evidence favorable to an accused upon request violates due process where the evidence

22   is material either to guilt or to punishment, irrespective of the good faith or bad faith of

23   the prosecution."  373 U.S. 83, 87 (1963).  Evidence is "material" if there is a reasonable

24

FINDINGS OF FACT AND CONCLUSIONS OF
LAW- 7

1    probability that, had the evidence been disclosed to the defense, the result of the

2    proceeding would have been different.  United States v. Bagley, 473 U.S. 667, 682

3    (1985).  To establish materiality, the "question is not whether the defendant would more

4    likely than not have received a different verdict with the evidence, but whether in its

5    absence he received a fair trial." Kyles v. Whitley, 514 U.S. 419, 434 (1995).  "A

6    'reasonable probability' of a different result is [ ] shown when the government's

7    evidentiary suppression 'undermines confidence in the outcome of trial.'" Id.

8  44. When the prosecution fails to disclose a promise made to a witness, courts assess whether

9    the credibility of a witness would have been important to the juror's verdict.  Materiality

10    is lacking when the tainted witness's testimony is duplicative or the witness was

11    sufficiently impeached on other grounds.  In Hovey v. Ayers, for example, the

12    prosecution's failure to disclose an "unspoken agreement" with a witness was not

13    material because the substance of witness's testimony was also offered through another

14    witness.  458 F.3d 892 (9th Cir. 2006).  In Akrawi v. Booker, the prosecution's failure to

15    disclose a "mutual understanding" to reduce a witness's charges was not material

16    because, even without the disclosure, defense counsel sufficiently hinted at the likelihood

17    of a deal at trial.  572 F.3d 252, 262 (6th Cir. 2009).

18  45. But courts have found a Brady violation when the witness's testimony is central to the

19    prosecution and assessment of the witness's credibility is crucial to the trial outcome.  In

20    Singh v. Prunty, the prosecution's failure to disclose benefits a jailhouse informant

21    received was material. 142 F.3d 1157 (9th Cir. 1998).  In Singh, the prosecution's murder-

22    for-hire theory was based on the informant testifying that defendant had tried to hire him

23    for the murder.   Assessment of the informant's credibility was, therefore, important.

24

FINDINGS OF FACT AND CONCLUSIONS OF
LAW- 8

46. In <u>Bagley v. Lumpkin</u>, the court held the compensation two witnesses received before and after trial was material and subject to <u>Brady</u> disclosure. 798 F.2d 1297 (9th Cir. 1986). In <u>Bagley</u>, defense counsel did not question the two witnesses for bias or self-interest and the two witnesses provided the only evidence for one of the charges. <u>Id.</u> at 1302. Corroborating tapes of the witnesses' conversations with defense were inadmissible. <u>Id.</u> Likewise, in <u>Silva v. Brown</u>, the court held failure to disclose an agreement that witness would not submit to a psychiatric evaluation was material because witness's testimony was the only evidence detailing how the murder took place and by whom. 416 F.3d 980, 989 (9th Cir. 2005).

47. Here, assessment of Anderson's credibility was not crucial to the trial outcome. Unlike <u>Bagley</u> or <u>Silva</u>, Anderson did not testify as to who killed Diorio or how. Unlike <u>Singh</u>, Anderson's testimony was not necessary to support a prosecutorial theory. The most damning part of Anderson's testimony was the introduction of excerpts of the recorded "body wire" conversations where Kymberly Garnett discussed the "zapper" theft and the disposal of Mr. Garnett's bloody clothes and the body wire excerpts offered were ruled admissible. The government's case did not rely on the jury finding Anderson to be a credible witness; the contents of the body wire excerpts are independent of any promise of reward. The jury had the opportunity to listen to the tapes themselves. The tape recordings were made long before any promise of a reward was known to the witness and could not have influenced her contact with Kymberly Garnett. As in <u>Hovey</u>, the substance of Anderson's testimony would have been offered to the jury regardless of the reward's disclosure.

\\

1      **IV.  Conclusions of Law**

2   48. The Court has jurisdiction over the parties and over the issues presented.

3   49. Petitioner bears the burden of proving the facts underlying each element of his claim of

4      constitutional error by a preponderance of the evidence.

5   50. The Petitioner has failed to establish the materiality of the information kept from the

6      defense.  The prosecution led Anderson to believe that the recommendation hinged on her

7      cooperation and testimony and, if she complied, they would recommend the reward.  This

8      information should have been revealed to the defense but its withholding does not rise to

9      a constitutional violation.  Anderson's receipt of the reward was not material to the

10     outcome of the case because it does not undermine confidence in the outcome of the trial.

11   51. The Court denies the petitioner for habeas relief.

12      The clerk is ordered to provide copies of this order to all counsel.

13      Dated this 1st day of March, 2011.

14

15

16                                         _Marsha J. Pechman_

17                                         Marsha J. Pechman
                                           United States District Judge

18

19

20

21

22

23

24

FINDINGS OF FACT AND CONCLUSIONS OF
LAW- 10